# Weekly Advance Abstract Opinions
## CURRENT OHIO COUNTY COURTS CASES

No. 38
BUSCH v. WILGUS
Logan County Common Pleas, August 21, 1922

**RIPARIAN RIGHTS—Orchard Island owners of lots fronting on Indian Lake, run to low water mark—Injunction lies, against lessees from State, who try to occupy for private use—Easement implied.**

HOVER, J.:

For full opinion see 24 NP. NS. 208 (LR. Dec. 4, 1922)

Epitomized Opinion.

In 1856 the State of Ohio, by building a dam across the Miami River in Logan County, unpounding the water, creater an artificial lake containing several thousand acres of land, known as the Lewistown Reservoir. At the dam is a gate that can be raised or lowered so as to regulate the flow of water out of reservoir, and by manipulating it, a high and a low water mark on adjacent lands would be obtained.

The lake was originally constructed as a feeder to the Miaim Canal, but the legislature made it and the adjoining lands a public park called Indian Lake. One of the visible knolls that appeared above the water in the lake is known as Orchard Island. This island was sold by the State, under the description of "Orchard Island" containing 83.89 acres of land. All reference to boundaries was omitted from the deed, and the question that has now arisen is what are the confines of the land conveyed. A survey showed that the 83.89 acres measured at low water mark would contain but 61.38 acres at high mark.

The land on Orchard Island has been pealled and sold to owners who have built cottages thereon. The State, assuming to own the beach, leased it to certain abutting lot owners, and gave them permission to construct and maintain a dock landing and board walk between the ordinary low water mark and the high water mark. In this case the owner of Cot. 138 began to build such a walk, and thus appropriate this strip of land, and his neighbor objected that it would interfere with his ingress and egress to the lake from his property. The Court held:

1. That where an island is platted into street, parks, etc.; and the lots fronting on the water are shown on the plat without any space or margin between them and low water wark, the lot owner, in the absence of restriction to the contrary, takes title to the land fronting on the lake, to ordinary low water mark.

2. Injunction will be against one who attempts to take possession and occupy the shore of a platted Orchard Island lot, fronting on Indian Lake, under a lease from the State.

3. The title to orchard Island lots fronting on Indian Lake are subject to implication, to an easement arising by necessity occasioned by the rise and flow of the waters of the lake.

**Attorneys—**Sayre and West & West, for plaintff; Southard & Goodwin, for defendant.

---

No. 39
BERNER v. WELLBAUM, et al
Mongtomery Common Pleas, April 22, 1922

For full opinion, see 24 NP, NS, 221 (LR, Dec. 4, 1922)

**JURISDDICTION—Dayton Municipal Court—Automobile accident in City—Defendant's residence outside.**

SNEDIKER, J.

Epitomized Opinion

Error to the Dayton Municipal Court

This action was brought for damages arising from an automobile accident in the City of Dayton. After the claim was filed in the Municipal Court, summons was issued to and served by the sheriff, as the defendants resided outside the city. The defendants came into court specially, and made a motion to strike the case from the files for want of jurisdiction in the Municipal Court. The motion was overruled. Jury impaneled and judgment of $125 given for plaintiff. Error was then prosecuted in this Court, which held:

1. The claim of plaintiff in the Court below, being for $250, was within the jurisdiction of a Justice of the Peace, and could have been properly exercised in the Municipal Court, under Secs. 1579-54 GC. But 1579-46 GC, indicates plainly that the territorial jurisdiction of the Dayton Municipal Court is within the city limits, unless some law varies the rule.

2. The defendant claims that the automobile law, 6308 GC, for regulation of motor vehicles applies. But it seems clear that this law was intended to furnish a means by which one claiming to be injured through the negligence of a non-resident of his county, might sue in the county of his residence; but where accidents occur as between persons all of whom live in the same county, there are ample provisions for bringing the action in his own township, or within the township where the defendant resides, or, if the amount involved warrants it, in the County Common Pleas Court.

---

## BELATED OHIO JUDICIAL OPINIONS

When we began to prepare the Introductory Number of the Abstract, we knew of the complaints as to the average time it took to produce opinions in print, after the decisions were rendered, and of the pancity of reported cases, as compared with number decided. Knowing from experience the defects in the manner of handling these opinions, we worked out the Abstract as a proper medium to give the deserved speed and thoroughness in publishing Ohio case law.

The Abstract has now begun this work in earnest and proposes to put in print the work of the different judiciaries having Ohio jurisdiction, in clear, brief form, before the constituency of the Courts, as near as possible to the day the decisions are rendered, thus eliminating as much as possible of the dissatisfaction that exists with the present methods.

We have begun this week with the situation of Supreme Court cases. We give in this issue eleven opinions, in which the dates of rendering the opinion range from March 31 to July 1, but mostly May and June announcements. For the next week we have about an equal number of such belated cases, and with that issue we shall be so near caught up with the Court that all the cases prepared for Volume 105 O. S., and ready for report, will have been given. From then on it will be easy to keep abreast the report work of this Court.

The situation in the work of the Court of Appeals is described elsewhere in this paper. We shall also produce the opinions of that Court with the same commendable promptness, and promulgate many opinions of that Court that have lain dormant since the beginning of the year. We shall also begin the publication of a number of selected Common Pleas opinions, from a collection we have accumulated, and shall keep up our opinions of the Federal Courts.

This enlargement of the work we have undertaken is going to cause additional expense, but we believe the profession will appreciate our plan, and our work, and that there will be a generous and substantial response to our efforts.

---

## A GOOD START

Of the 14 Supreme and Appellate Opinions contained in this issue of the Abstract, thirteen have not been previously published.